```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Civil Action |
| | : | |
| v. | : | |
| | : | |
| JOHN POZSGAI AND GISELLA POZSGAI | : | NO. 88-6545 |

**MEMORANDUM AND ORDER**

**Fullam, Sr. J.**                                           **March  8, 2007**

In this action brought under the Clean Water Act, the plaintiff and the intervenors have moved for an order of contempt.  After consideration of the evidence presented at the hearings, the submissions of the parties, and the ruling of the Supreme Court in <u>Rapanos v. United States</u>, 547 U.S. ----, 126 S. Ct. 2208 (2006), I have determined that a finding of contempt is warranted.

A brief history of the case:  By order dated January 8, 1990, I entered a permanent injunction against the defendants, holding that they violated the Clean Water Act by filling in more than five acres of wetlands on their property in Falls Township, Bucks County, without a permit.  The order provided in part that:

   1.   Defendants are PERMANENTLY ENJOINED from any further
        filling at the Pozsgai site without first obtaining a
        permit from the Army Corps of Engineers.

                           .  .  .

   3.   The restoration plan submitted by the Corps will be
        implemented by all defendants, each to bear a share of
        the costs proportionate to his/its responsibility for
        the damage done to the site.  If the parties cannot
        agree upon the relative responsibility of each
        defendant, they are directed to submit their positions

on this issue to the court within 15 days. The Court of Appeals affirmed and the Supreme Court declined to hear the case. United States v. Pozsgai, 999 F.2d 719 (3d Cir. 1993), *cert denied*, 510 U.S. 1110 (1994).

During several days of hearings, the government presented considerable evidence of continued filling and of the defendants' failure to comply with the restoration plan. Particularly persuasive were aerial photographs that showed the change in the property from continued filling. The defendants generally denied that filling had occurred, but contended that if it had, it was done without their authorization. There was testimony from a witness, Brian Brzezinski, that he had placed some material on the site without the permission of the Pozsgais, but not in the quantity alleged by Plaintiff. I find that the defendants violated the January 8, 1990 Order.

Next, I must determine whether the decision in Rapanos prevents a finding of contempt. I conclude that it does not. The Supreme Court in Rapanos addressed the question of when property properly can be designated "wetlands" subject to the Clean Water Act. There was no majority opinion; Justice Kennedy concurred in the holding of Justice Scalia's plurality opinion, but wrote separately. The parties dispute whether this Court should apply the test for wetlands in the plurality opinion or that in Justice Kennedy's concurrence.

The Supreme Court has held that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds. . . ." Marks v. United States, 430 U.S. 188, 193 (1977) (quoting Gregg v. Georgia, 428 U.S. 153, 169 n. 15 (1979)). The courts have taken somewhat different approaches in interpreting Rapanos in the light of Marks. Compare Northern California River Watch v. City of Healdsburg, 457 F.3d 1023, 1025 (9th Cir. 2006) (holding that Justice Kennedy's test should be applied) with United States v. Johnson, 467 F.3d 56 (1st Cir. 2006) (holding that either the plurality test or Justice Kennedy test may be applied; the court should apply the reasoning that would effect the intent of a majority of the Court). For purposes of this litigation, I will apply Justice Kennedy's test.

According to Justice Kennedy:

> [W]etlands possess the requisite nexus, and thus come within the statutory phrase "navigable waters" if the wetlands either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of other covered waters more readily understood as "navigable." When, in contrast, wetlands' effects on water quality are speculative or insubstantial, they fall outside the zone fairly encompassed by the statutory term "navigable waters."

Rapanos, 547 U.S. at — . (Kennedy, J. concurring). Justice Kennedy also concluded that an "intermittent flow can constitute

a stream" and that the Clean Water Act may cover "the paths of such impermanent streams." Id. (Kennedy, J. concurring).

Under Justice Kennedy's definition, the defendants' property constitutes wetlands. The plaintiff has produced evidence in its supplemental filings that show a path from the property here to navigable waters. In particular, Kevin Maley, who was accepted as an expert witness in the interpretation of aerial photography at the hearing, submitted a declaration that in his opinion, "the stream between the Pozsgai site and the Pennsylvania Canal flows continuously for most of the year, except during summer and early fall," although rain provides some temporary flow during those times. Decl. Of Kevin Maley at ¶ 7. The defendants argue that there is no evidence that the canal is navigable. Upon consideration of all the material submitted, I believe that the property is fairly encompassed within the definition of wetlands.

Even if the property could not be considered wetlands after the Rapanos decision, I find that the defendants exhausted all of their appeals, and a change in the law does not absolve them of contempt. The defendants have violated the valid order of this Court and are therefore in contempt.

An order follows.