# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,      :
et al.,
          Plaintiffs,      :      CIVIL ACTION
                            :      No. 88-6545
            v.           :
GIZELLA POZSGAI,         :
          Defendant.      :

## ORDER

**AND NOW,** this 9th day of November, 2020, it is **ORDERED** that The United States'
Motion to Implement 2007 Contempt Order (ECF No. 234) is **GRANTED**.  It is further

**ORDERED**:

1. The Court finds that Defendant Gizella Pozsgai failed to complete remediation of the
Morrisville property within 90 days of March 8, 2007, as set forth in paragraph 3 of the Court's
March 8, 2007 Order.

2. By operation of the Court's March 8, 2007 Order, the sanctions imposed in paragraph 4.a.
through 4.i. of that order are imposed as set forth therein and repeated below:

    a. the U.S. Army Corps of Engineers is authorized to designate persons to enter upon and
    remediate the Morrisville property in accordance with the February 13, 1996 Restoration
    Plan of the U.S. Army Corps of Engineers, as that plan may be reasonably amended or
    adjusted by the Corps;

    b. the U.S. Army Corps of Engineers, or anyone designated by it, is authorized to enter
    upon and inspect the Morrisville property at such times as the Corps may choose;

    c. A protective buffer, as designed by the U.S. Army Corps of Engineers, is imposed in
    upland areas around all water and wetlands areas on the Pozsgai site to prevent further
    encroachments;

    d. A judgment is assessed against Defendant Gizella Pozsgai of all costs reasonably
    incurred in connection with the enforcement of the Court's March 8, 2007 Order and the
    Order of January 8, 1990, including, but not limited to, oversight costs of the Corps;

    e. A judgment lien is assessed against the Morrisville property for all costs reasonably

incurred in connection with the enforcement of the Court's March 8, 2007 Order and the Order of January 8, 1990, including, but not limited to, oversight costs of the Corps;

f. the United States, the U.S. Army Corps of Engineers, and any agents, servants, contractors, and designees thereof, are held harmless for any actions (other than intentional misconduct or gross negligence) undertaken under color of the Court's March 8, 2007 Order;

g. a deed restriction is imposed upon all areas remediated pursuant to the Court's March 8, 2007 Order, all other water and wetland areas on the Morrisville property, and all protective buffers created pursuant to this Order, that will forever designate and protect them as waters, wetlands, and protective buffers as open space, and so that all future owners of the property, or an interest in the property, will be aware of the presence of the waters, wetlands and protective buffers, and the existence of the Court's March 8, 2007 Order;

h. Defendant Gizella Pozsgai and any subsequent owners of the water and wetland areas are required to inform any contractors, lessors, or assigns of the existence and terms of the Court's March 8, 2007 Order;

i. the United States may recover its costs incurred in connection with all contempt proceedings.

3. Further implementing paragraph 4.g. of the Court's March 8, 2007 Order:

a. The deed restriction attached as Exhibit A is imposed as a deed restriction on the Morrisville property.

b. The deed restriction attached as Exhibit A shall be lifted if, by express written mutual agreement of the defendant and the United States, the Morrisville property is transferred to a third party that agrees to perform the remediation of the Morrisville property, as set forth in paragraph 3 of the Court's March 8, 2007 Order.

c. The United States may recover any costs incurred in connection with recording the deed restriction consistent with state and local laws.

_s/ANITA B. BRODY, J.___
ANITA B. BRODY, J.

Copies **VIA ECF**

# Exhibit A

The County Parcel Identification No. of the Property is: 13-028-083
Owner: Gizella Pozsgai
Property Address: 536 W. Bridge Street, Morrisville, PA 19067

## DEED RESTRICTION

This DEED RESTRICTION is ordered by the United States District Court for the Eastern District of Pennsylvania;

WITNESSETH:

WHEREAS, Gizella Pozsgai (hereinafter "Owner") is the fee simple owner of certain tract of land known as the "Pozsgai Restoration Site" recorded at the Bucks County Recorder of Deeds as 536 W. Bridge Street, Morrisville, PA, in Deed Book 2758, at Page 857, and instrument number 1987052319, as owned by John Pozsgai and Gizella Pozsgai ("Owner"), more particularly described in the Deed attached hereto as Exhibit A and incorporated by reference, hereinafter referred to as the "Property" and as further described therein:

Beginning at a point on the Southeasterly side of West Bridge Street (50.00 feet wide) at a corner of lands now or late of Julian & Genevieve Yakolovicz; thence extending from said point of beginning along the said Yakolovicz's land the two following courses and distances: (1) South 35 degrees, 57 minutes, 00 seconds East, 377.60 feet to an iron pin and (2) North 54 degrees, 03 minutes, 00 seconds East, 72.80 feet to an iron pin, a corner of lands new or late of Pranab Goswani; thence extending along the same SoutJ1 35 degrees, 57 minutes, 00 seconds East, 360.00 feet to an iron pin in line of lands now or late of Penncentral Corp.; thence extending along the same, South 54 degrees, 03 minutes, 00 seconds West, 55.54 feet to an iron pin in line of lands now or late of Falls Township Partnership; thence extending along the same the two following curses and distances: (1) North 39 degrees, 00 minutes, 00 seconds; West 1.28 feet to an iron pin and (2) South 53 degrees, 57 minutes, 52 seconds West, 657.74 feet to an iron pine, thence extending North 34 degrees, 17 minutes, 37 seconds West, 258.56 feet to an iron pin; thence extending North 28 degrees, 40 minutes, 34 seconds West, 426.41 feet to an iron pin; thence extending in a Northerly direction on the arc of a circle curving to the right having a radius of 35.00 feet the arc distance of 49.80 feet to an iron pin; thence extending North 37 degrees, 09 minutes, 00 seconds West, 10.00 feet to an iron pin on the Southeasterly side of West Bridge Street; thence extending along the same North 52 degrees, 51 minutes, 00 seconds East, 745.47 feet to the first mentioned point and place of beginning.

WHEREAS, the United States of America initiated legal action pertaining to the Property in the United States District Court for the Eastern District of Pennsylvania as Case Number 88-6545 (the "Legal Action"); and

WHEREAS, in the Legal Action, the United States District Court entered an Order of Civil Contempt on March 8, 2007 ("2007 Contempt Order"), requiring the Owners to complete remediation of the Property in accordance with the February 13, 1996 Restoration Plan of the U.S. Army Corps of Engineers, as that plan may be reasonably amended or adjusted by the Corps;

WHEREAS, the 2007 Contempt Order is attached as Exhibit B and the Restoration Plan is attached as Exhibit C;

WHEREAS, the 2007 Order of Civil Contempt provides that a sanction for failure of the Owners to complete remediation of the Property is imposing "upon all areas remediated pursuant to this Order, all other water and wetland areas on the Morrisville Property, and all protective buffers created pursuant to this Order, a deed restriction that will forever designate and protect them as waters, wetlands, and protective buffers as open space, and so that all future owners of the property, will be aware of the presence of the waters, wetlands and protective buffers, and this existence of this Court's Order."

WHEREAS, the Owners have failed to remediate the Property as required by the 2007 Contempt Order;

NOW, THEREFORE, in consideration of the 2007 Contempt Order and the failure of Owner to complete the remediation, the Court hereby imposes the following Deed Restriction on the Property:

        1.      **Purpose**: The purpose of this Deed Restriction is to forever designate and protect all waters, wetlands, and protective buffers on the Property as open space. The Deed Restriction will confine the use of the Property to such activities as are consistent with the purpose of this Deed Restriction.

        2.      **Duration**:  Unless modified as set forth herein, this Deed Restriction shall remain in effect in perpetuity, shall run with the land regardless of ownership or use, and is binding upon all subsequent declarants, their heirs, executors, administrators, successors, representatives, devisees, and assigns, as the case may be, as long as said party shall have any interest in any part of the Property.

        3.      **Permitted Uses:**  This Deed Restriction will not prevent the Defendant, subsequent property owner(s), and the personal representatives, heirs, successors, and assigns of either the Defendant or subsequent property owner from making use of the Property to remediate the Property as required by the 2007 Contempt Order, or from uses that are not expressly prohibited herein and are not inconsistent with the purpose of this Deed Restriction.

        4.      **Restrictions**:  The use of the Property is hereby restricted to effectuate the remediation of the Property and its preservation as open space as set forth in the 2007 Contempt Order. Except when an approved purpose under Paragraph 1., above, or as necessary to

accomplish the remediation, the following activities and uses are expressly prohibited in, on, over, or under the Property, subject to all of the express terms and conditions below:

a. construction of man-made structures including but not limited to the construction, removal, placement, preservation, maintenance, alteration, or decoration of any buildings, roads, utility lines, billboards, or other advertising. This restriction does not include the placement of signs for safety purposes or boundary demarcation;

b. removal, excavation, disturbance, or dredging of soil, sand, peat, gravel, or aggregate material of any kind; or any change in the topography of the land, including any discharges of dredged or fill material, ditching, extraction, drilling, driving of piles, mining, or excavation of any kind;

c. drainage or disturbance of the water level or the water table, except for pre-existing and approved stormwater discharges and any maintenance associated with those stormwater discharges. All pre-existing and approved drainage/stormwater discharge features should be shown on the accompanying plat map or approved plan and attached to this Declaration; and identified in Section 9;

d. storage, dumping, depositing, abandoning, discharging, or releasing of any gaseous, liquid, solid, or hazardous waste substance, yard waste, materials or debris of whatever nature on, in, over, or underground or into surface or ground water, except for pre-existing and approved stormwater discharges and any maintenance associated with those stormwater discharges;

e. planting or introduction of non-native species;

f. use of herbicides, insecticides, or pesticides, or other chemicals, except for as may be necessary to control invasive species that threaten the natural character of the Conservation Area(s). State-approved municipal application programs necessary to protect the public health and welfare are not included in this prohibition;

g. The mowing, cutting, pruning, or removal of vegetation of any kind; disturbance, destruction, or the collection of any trees, shrubs, or other vegetation; except for pruning, cutting or removal for: safety purposes, control in accordance with accepted scientific forestry management practices for diseased or dead vegetation, control of non-native species and noxious weeds, or scientific or nature study.

h. Conversion of, or expansion into, any portion of the Property for use of agriculture, horticulture, aquaculture, silviculture, livestock production or grazing activities. This prohibition also includes conversion from one type of these activities to another (e.g., from agriculture to silviculture).

i. Other acts, uses, excavation, or discharges which adversely affect fish or wildlife habitat or the preservation of lands, waterways, or other aquatic resources within the Property;

j. Recreational use of ATVs, dirt bikes, motorcycles, off-road vehicles, or motor vehicle of any kind is prohibited in the Property unless necessary to implement the terms of the Remedy Order.

5. **Access and Enforcement**: Representatives of the US Army Corps of Engineers (Corps), the US Environmental Protection Agency (EPA) and the US Department of Justice (DOJ) shall have the right to enter and go upon the Property, to inspect the Property, and to take actions necessary to verify compliance with this Deed Restriction. When practicable, such entry shall be upon prior reasonable notice to the property owner. The Corps, EPA, and DOJ have a discretionary right to enforce this Deed Restriction in a judicial action against any person(s) or other entity(ies) violating or attempting to violate these restrictions: provided, however, that no violation of these restrictions shall result in a forfeiture or reversion of title. In any enforcement action, an enforcing agency shall be entitled to a complete restoration for any violation, as well as any other judicial remedy such as civil penalties.

6. **Recording by Parties**: The Owner shall record this Deed Restriction in the Land Records of Bucks County and provide United States with proof of recordation within 60 days of the entry of the attached Order. In the event the Owner fails to do so, the United States may so record this Deed Restriction.

7. **Notice of Transfer of Property Interests**: No transfer of the rights of this Deed Restriction, or of any other property interests pertaining to the Property shall occur without sixty (60) calendar days prior written notice to the United States Department of Justice and Department of the Army Corps of Engineers. Written notice shall be provided to the following:

U.S. Army Corps of Engineers                    U.S. Department of Justice

To: U.S. Army Corps of Engineers                To: U.S. Attorney's Office, Eastern District of
Philadelphia District                           Pennsylvania
Regulatory Branch Chief                         Attn: Chief, Civil Division
100 Penn Square East                            615 Chestnut Street, Suite 1250
Philadelphia, PA 19107-3390                     Philadelphia, PA 19106

8. **Modifications**: No changes or alterations to the provision in this Deed Restriction shall be made without prior written approval of the United States.

9. **Reserved Rights**: Nothing in this Deed Restriction shall prevent the Owner from selling, transferring, encumbering, or taking other action pertaining to the Property unless it is inconsistent with or prohibited by this Deed Restriction. If the restoration required by the 2007 Contempt Order necessitates any unanticipated infrastructure modifications, utility

relocation, drainage ditches, or stormwater controls within the Property or if situations require measures to remove threats to life or property within the identified Property said activities must be approved in writing by the United States subject to terms and conditions set forth in the written approval. Approval is subject to the sole discretion of the United States. Approval of said activity by the United States is in addition to any Clean Water Act, Section 404 permit, or other authorization, which may be required in order to legally implement said activity. The Owner accepts the obligation to place any other responsible party on reasonable prior notice of their need to request such approval.

       10.    **<u>Severability:</u>**  If any portion of this Deed Restriction, or the application thereof to any person or circumstance, is found to be invalid, the remainder of the provisions of this instrument, or application of such provision to persons or circumstances other than those as to which it is found to be invalid, as the case may be, shall not be affected thereby.


_____
Anita B. Brody
United States District Judge

# Exhibit A

Fee Simple Deed No. 7325          Printed for and Sold by John C. Clark Co., 1336 Walnut St., Phila.

# This Indenture Made the 19th day of

June In the year of our Lord one thousand nine hundred and Eighty-seven (19 87 )

## Between

Frances Cassalia, Peter Cassalia and Alan B. Cassalia

(hereinafter called the Grantor s ), of the one part, and

John Pozagai and Gizella Pozagai, husband and wife

(hereinafter called the Grantee s ), of the other part.

## Witnesseth That the said Grantor s

for and in consideration of the sum of

One Hundred Forty-three Thousand Dollars ($143,000.00)------------------------lawful money of the United States of America, unto    them    well and truly paid by the said Grantee s, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged,    have granted, bargained and sold, released and confirmed, and by these presents  do   grant, bargain and sell, release and confirm unto the said Grantee s, their  heirs and assigns,   as Tenants by the Entireties.

ALL THAT CERTAIN lot or tract of ground, situate partly in the Township of Falls and partly in the Borough of Morrisville and described according to a certain Plan thereof known as Survey Plan prepared for John Pozagai, made by Ezra Golub Assoc., Engineers & Surveyors, dated May 27, 1987, as follows, to wit:

BEGINNING at a point on the Southeasterly side of West Bridge Street (50.00 feet wide) at a corner of lands now or late of Julian & Genovievo Yakolovicz; thence extending from said point of beginning along the said Yakolovicz's land the two following courses and distances:  (1) South 35 degrees, 57 minutes, 00 seconds East, 377.60 feet to an iron pin and (2) North 54 degrees, 03 minutes, 00 seconds East, 72.80 feet to an iron pin, a corner of lands now or late of Pranab Goswami; thence extending along the same South 35 degrees, 57 minutes, 00 seconds East, 360.00 feet to an iron pin in line of lands now or late of Penncentral Corp.; thence extending along the same, South 54 degrees, 03 minutes, 00 seconds West, 55.54 feet to an iron pin in line of lands now or late of Falls Township Partnership; thence extending along the same the two following courses and distances:  (1) North 39 degrees, 00 minutes, 00 seconds West, 1.28 feet to an iron pin and (2) South 53 degrees, 57 minutes, 52 seconds West, 857.74 feet to an iron pin; thence extending North 34 degrees, 17 minutes, 37 seconds West, 258.56 feet to an iron pin; thence extending North 28 degrees, 40 minutes, 34 seconds West, 426.41 feet to an iron pin; thence extending in a Northerly direction on the arc of a circle curving to the right having a radius of 35.00 feet the arc distance of 49.80 feet to an iron pin; thence extending North 37 degrees, 09 minutes, 00 seconds West, 10.00 feet to an iron pin on the Southeasterly side of West Bridge Street; thence extending along the same North 52 degrees, 51 minutes, 00 seconds East, 745.47 feet to the first mentioned point and place of beginning.

CONTAINING 14.23 acres.

BEING part of the same premises which Benny Cassalia and Frances Cassalia, his

D2758-0857

**Together** with all and singular the Improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in any wise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of them

the said grantors, as well at law as in equity, of, in, and to the same.

**To have and to hold** the said lot or piece of ground described and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the hereditaments said Grantees, their heirs and assigns, to and for the only proper use and behoof of the said Grantees, their heirs and assigns forever. as Tenants by the Entireties.

**And** the said Grantor s for themselves and their heirs, executors and administrators do covenant, promise and agree, to and with the said Grantee s and their heirs and assigns, by these presents, that they the said Grantor s and their heirs, all and singular the hereditaments and premises hereby granted or mentioned and intended so to be, with the appurtenances, unto the said Grantee s their heirs and assigns, against they the said Grantor s and their heirs, and against all and every person and persons whomsoever lawfully claiming or to claim the same or any part thereof, by, from or under him, her or any of them, shall and will subject as aforesaid

WARRANT and forever DEFEND.

**In Witness Whereof**, the part ies of the first part hereunto set their hand, and seal s. Dated the day and year first above written.

**Sealed and Delivered**
IN THE PRESENCE OF US:

Frances Cassalia

Peter Cassalia

Alan E. Cassalia

JUNE GENTILCORE LENTON
Notary Public, Glenside, Mont. County
My Commission Expires Nov. 12, 1920

D2758-0859

wife by Deed dated December 29, 1969 and recorded in Bucks County, Pennsylvania, in Deed Book 1960 page 1184, granted and conveyed unto Frances Cassalia, Peter Cassalia and Alan B. Cassalia, in fee.

THIS property is fully assessed and taxed by the Township of Falls.

D2758-0858

| COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF REVENUE | COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF REVENUE |
|---|---|
| REALTY TRANSFER TAX   JUN25'87   530.00 | REALTY TRANSFER TAX   JUN25'87   900.00 |

$1,430.— MUNICIPAL
TRANSFER TAX PAID



Neshaminy Abstract Co., Inc.

MER 10,070-87-KB

# DEED.

Frances Cassalia,
Peter Cassalia and
Alan B. Cassalia

TO

John Pozagai and
Gizella Poznagai, husband and wife

733S        John C. Clark Co., Phila.        1957

PREMISES:    14.23 acres
West Bridge Street
Falls Township and
Morrisville Borough
Bucks County, Penna.

Commonwealth of Pennsylvania
County of Bucks } ss:

On this, the 19th day of June, 1987, before me, a Notary Public for the Commonwealth of Pennsylvania, residing in the County of Bucks, personally appeared Frances Cassalia, Peter Cassalia and Alan B. Cassalia, known to me (satisfactorily proved) to be the persons whose name(s) (are) subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

I hereunto set my hand and official seal.

BUCKS COUNTY ss:
RECORDED IN THE RECORDER'S
OFFICE OF SAID COUNTY IN
Deed
BOOK
AT PAGE 857 &c.
WITNESS MY HAND AND SEAL OF
OFFICE
June 25th, 1987

RECORDER OF DEEDS

The address of the above-named Grantee is 536 W. Bridge St. Morrisville Pa 19067
On behalf of the Grantee

14 —

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :          Civil Action
                                  :
                v.                :
                                  :
JOHN POZSGAI AND GISELLA POZSGAI  :          NO. 88-6545

**ORDER OF CIVIL CONTEMPT**

AND NOW, this 8th day of March 2007, upon consideration of the United States of America's Application for an Order to Show Cause why Defendants John and Gisella Pozsgai Should Not Be Held in Civil Contempt, and all documents in support thereof and in opposition thereto and after evidentiary hearings, and good cause having been shown,

IT IS hereby ORDERED that:

1.      Defendants John Pozsgai and Gisella Pozsgai be and hereby are found to be in civil contempt for failure to comply with this Court's Order of January 8, 1990.

2.      Defendants John Pozsgai and Gisella Pozsgai are permanently enjoined from conducting, permitting, or authorizing any work of any kind whatsoever directly or indirectly at any location on the Morrisville site that is within the area subject to the jurisdictional determination made by the U.S. Army Corps of Engineers and adopted by this Court and the Third Circuit and appearing on Government Exhibit 1, a copy of which is attached hereto, that involves any: (a) filling, (b) clearing, (c) leveling, (d) dumping, (e) depositing, or (f) removing of any

type of material without first obtaining a permit from the U.S. Army Corps of Engineers.

3.     Defendants John Pozsgai and Gisella Pozsgai shall complete remediation of the Morrisville property in accordance with the February 13, 1996 Restoration Plan of the U.S. Army Corps of Engineers, as that plan may be reasonably amended or adjusted by the Corps.  Such remediation is to be completed to the satisfaction of the Corps withing 90 days of the date of entry of this Order.

4.     In the event that Defendants John Pozsgai and Gisella Pozsgai fail to complete remediation of the Morrisville property as set forth in Paragraph 3 above, then, in order to compensate for Defendants' non-compliance, the following sanctions shall be imposed:

    a.  Authorizing the U.S. Army Corps of Engineers to designate persons to enter upon and remediate the Morrisville property in accordance with the  February 13, 1996 Restoration Plan of the U.S. Army Corps of Engineers, as that plan may be reasonably amended or adjusted by the Corps;

    b.  Authorizing the U.S. Army Corps of Engineers, or anyone designated by it, to enter upon and inspect the Morrisville property at such times as the Corps may choose;

    c.  Imposing a protective buffer, as designed by the U.S. Army Corps of Engineers, in uplands areas around all water and wetlands areas on the Pozsgai site to prevent further encroachments;

    d.  Assessing against Defendants John Pozsgai and Gisella Pozsgai, individually, as a judgment all costs reasonably incurred in connection with the enforcement

of this Order and the Order of January 8, 1990,
including, but not limited to, oversight costs of the
Corps;

e.   Assessing as a judgment lien against the Morrisville
property all costs reasonably incurred in connection
with the enforcement of this Order and the Order of
January 8, 1990, including, but not limited to,
oversight costs of the Corps;

f.   Holding the United States, the U.S. Army Corps of
Engineers, and any agents, servants, contractors, and
designees thereof harmless for any actions (other than
intentional misconduct or gross negligence) undertaken
under color of this Order;

g.   Imposing upon all areas remediated pursuant to this
Order, all other water and wetland areas on the
Morrisville property, and all protective buffers
created pursuant to this Order, a deed restriction that
will forever designate and protect them as waters,
wetlands, and protective buffers as open space, and so
that all future owners of the property, or an interest
in the property, will be aware of the presence of the
waters, wetlands and protective buffers, and this
existence of this Court's Order;

h.   Requiring that the Defendants John Pozsgai and Gisella
Pozsgai and any subsequent owners of the water and
wetland areas be required to inform any contractors,
lessors, or assigns of the existence and terms of this
Court's Order;

i.   Allowing the United States to recover its costs
incurred in connection with all contempt proceedings.


BY THE COURT:


/s/ John P. Fullam
Fullam,          Sr. J.


3

# Exhibit C

**DEPARTMENT OF THE ARMY**
PHILADELPHIA DISTRICT, CORPS OF ENGINEERS
WANAMAKER BUILDING, 100 PENN SQUARE EAST
PHILADELPHIA, PENNSYLVANIA 19107-3390

REPLY TO
ATTENTION OF

Office of Counsel          FEB 1 3 1996

SUBJECT:  United States v. John Pozsgai
          Civil Action No. 88-6545


Paul Kamenar
Washington Legal Foundation
2009 Massachusetts Ave., NW
Washington DC 20036

Dear Mr. Kamenar:

     Enclosed is a detailed restoration plan for the Pozsgai site.
The plan was developed as a result of the Corps' June, 1995 field
work.
     I look forward to meeting in the near future for further
discussion on implementing the plan.

                         Sincerely,




                         Barry Gale
                         Attorney


Enclosure

Copy Furnished with enclosure:

Cathy Votaw, U.S Attorney
John Pozsgai

MEMORANDUM THRU Frank J. Cianfrani, Chief, Regulatory Branch

FOR Barry Gale, Office of Counsel

SUBJECT: Restoration of Areas Subject to Federal Jurisdiction on Property
         Owned by Mr. John Pozsgai.  File: CENAP-OP-R-177300202-52


1.  The following comments relate to the Corps' June, 1995 investigation of
the Pozsgai site:

    a.  A field investigation was performed by the Philadelphia District Corps
of Engineers, in June 1995, to assess four issues:

        (1)  the extent of dredged and/or fill material remaining in areas
subject to Federal jurisdiction,

        (2)  the current condition of the unfilled wetlands,

        (3)  the condition of wetlands restored by J. Vinch and Sons, Inc.,
and Mercer Recylcing Corporation, and

        (4)  the location and amount of work required to restore areas subject
to Federal jurisdiction.

    b.  As part of the investigation, the site plan known as the 1990 Wetland
Restoration Plan, identified in the Court Order as the Restoration Plan
submitted by the Corps showing the limits of unauthorized work, was digitized
and surveyed in the field.  Identifying the extent of Federal jurisdiction
indicated on the 1990 Wetland Restoration Plan allowed comparison of the
extent of areas of unauthorized work in 1990 with June 1995 site conditions;

    c.  Taylor, Wiseman and Taylor Engineering, Mount Laurel, New Jersey (TWT)
was hired by the Philadelphia District to prepare the survey.  The 1990
Wetland Restoration Plan, including approximately 115 points identifying the
wetland/upland boundary and the limits of fill material, was given to TWT.
Points were digitized relative to known reference points along West Bridge
Street and the property corners.  In addition, the metes and bounds of the 115
points were calculated;

    d.  The site was divided into five segments (Enclosure 1).

    e.  The locations of the documentation points are identified on the survey
plan identified as "Wetlands Worksheet, Pozsgai Tract", prepared by Taylor
Wiseman & Taylor, drawing no. 353-18122, sheet 1 of 1, scale 1"=40', date June
21, 1995, revised July 21, 1995 (Enclosure 2).  All elevations were
established relative to Point A, an arbitrarily selected reference point
located in the non-filled wetlands adjacent to the restored wetland area.  The
elevation of Point A was set at 100.0 feet; and

f.  The depths of fill material were evaluated by either comparing the elevations of original soil surface horizons within soil pits to current surface elevations or, in areas where it was not possible to dig soil pits, by comparing elevations in adjacent undisturbed areas to surface elevations in areas currently filled.

2.  The following comments summarize the June, 1995 field investigation:

a.  Based on field investigations, 4.83 acres of waters of the United States, including wetlands, remained filled on the Pozsgai site.

b.  Approximately 23,000 cubic yards of dredged and/or fill materials remained in areas subject to Federal jurisdiction.

c.  Almost half of the 23,000 cubic yards of fill material remaining in areas subject to Federal jurisdiction, i.e. 11,500 cubic yards, is located on the northeast portion of the property where Mr. Pozsgai has indicated he is interested in building a garage.

d.  Fill material placed along the western edge of the stream is preventing normal overflow into wetlands on the Pozsgai property.  It also appears to be concentrating stormflows into wetlands east of the stream corridor where driftmarks and erosion of drainage channels indicate rapid movement of water through this area.

e.  Field investigations indicate that the extent of unauthorized work identified on the 1990 plan closely follows the extent of unauthorized work identified by Corps staff on June 21 and 22, 1995.

f.  A summary of the areas and depths of fill material remaining on the site is presented in Enclosure 3.

g.  Discrepancies between the limits of unauthorized work established by aerial photography in 1990 and the limits of unauthorized work established in the field in 1995 are summarized in Enclosure 4.

3.  Remedial Measures to Restore Areas Subject to Federal Jurisdiction:

(1) RESTORATION OF SECTION 1:

- Restoration of Section 1 involves removing between 500 and 600 cubic yards of material from approximately 0.3 acres.

- Fill material shall be removed to the prior surface of the ground, a relative elevation of approximately 98.8 feet.

- The pit area, including adjacent areas into which material has been sidecast along the ditch, shall be restored to its former condition.

- The upland/wetland edge shall be graded to a slope no steeper than 2:1 (horizontal to vertical) and stabilized.

- After excavation and grading, a wetland grass mix shall be seeded in the restored area and an upland grass mix shall be placed on any adjacent

disturbed slopes.

     (2)   RESTORATION OF SECTION 2:

     - Restoration of Section 2 involves removing between 2,200 and 2,600 cubic yards of material from 1.74 acres.

     - Fill material shall be removed to the prior surface of the ground.

     - Given the original slope of the land in this area, approximately 0.5 feet of material would have to be removed in the eastern portion of this section.

     - All debris and wood chips in this area shall be removed.

     - In the western portion of the section along the creek, approximately 2.0 to 2.5 feet of material shall be removed to reestablish both groundwater hydrology and periodic stream overflow.

     - After completion of excavation and grading, a wetland grass mix shall be seeded in restored area.

     (3)   RESTORATION OF SECTION 3:

     - Restoration of Section 3 involves removing approximately 4,770 cubic yards of material from 0.6 acres.

     - The unauthorized fill material is approximately 4.8 feet in depth.

     - Fill material shall be removed to the prior surface of the ground.

     - Due to the possible presence of sewage as noted by Mr. Wendell Kirkham in 1991, the presence of a sewage and/or sewer discharge shall be investigated prior to initiating restoration.

     (4)   RESTORATION OF SECTION 4:

     - Restoration of Section 4 involves removing approximately 11,584 cubic yards of fill material.

     - The fill material is approximately 4 to 5 feet deep over the original surface of the soil.

     - Fill material shall be removed to the prior surface of the ground. Of the 11,584 cubic yards of fill material, approximately 8,000 cubic yards are located on approximately 1.0 acre of jurisdictional wetlands located within 200 feet of West Bridge Street.

     - An additional 3,500 cubic yards extends southward on the dirt road adjacent to the stream.

     - Due to the possible presence of sewage as noted by Mr. Wendell Kirkham in 1991, the presence of a sewage and/or sewer discharge shall be investigated in the area within 200 feet of West Bridge Street prior to

initiating restoration.

      - Restoration activities on the remaining portion of Section 4, specifically the 0.43 acre area adjacent the stream, may proceed without investigation of possible contamination.

      - Restoration work shall consist of removing approximately 3.5 feet of fill material adjacent to the stream to reestablish both groundwater hydrology and periodic stream overflow.

      - After completion of excavation and grading, a wetland grass mix shall be seeded in restored area.

      (5) RESTORATION OF SECTION 5:

      - Restoration of Section 5 involves removing approximately 3,664 cubic yards of material from 0.66 acres.

      - Fill material shall be removed to the prior surface of the ground.

      - The upland/wetland edge shall be graded to a slope no steeper than 2:1 (horizontal to vertical) and stabilized.

      - After excavation and grading, a wetland grass mix shall be seeded in the restored area. An upland grass mix shall be placed on adjacent disturbed slopes.

4. You are requested to review the above noted information. If appropriate, you are further requested to provide the above noted information to Mr. Pozsgai's attorney.

5. Your cooperation in this matter is appreciated.

Frank J. Cianfrani
Chief, Regulatory Branch

WETLAND RESTORATION PLAN

JOHN POSSEGAR

BASIC PLAN



SUBJECT: CENAP-OP-R-173000202-52
POZSGAI, JOHN
AUGUST 8, 1995

AREA OF FILL MATERIAL AND ESTIMATED VOLUME OF FILL MATERIAL

| SECTION | ACREAGE | | AREA OF UNAUTHORIZED FILL MATERIAL 1990 | AREA OF UNAUTHORIZED FILL MATERIAL 1995 | APPROXIMATE DEPTH OF FILL MATERIAL | APPROXIMATE DEPTH OF FILL MATERIAL |
| | UPLAND | WETLAND | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| 1 | 1.28 | 1.02 | 0.32 | 0.30 | 1.1' | 526 |
| 2* | 0.77 | 3.93 | 1.87 | 1.74 | 0.9' to 2.5' | 2,488 |
| 3 | 0.83 | 1.88 | 1.26 | 0.60 | 4.8' | 4,703 |
| 4 | 0.22 | 2.36 | 1.55 | 1.53 | 0.5' to 5.8' | 11,584 |
| 5 | 0.79 | 1.17 | 1.13 | 0.66 | 2.2' to 8.3' | 3,664 |
| | 3.89 acres | 10.36 acres | 6.13 acres | 4.83 acres | | 22,965 cubic yards |

*Upland acreage in Section 2 includes 0.7 acres east of the stream
identified as uplands in 1990 that are, in part, wetlands.

Ms. Lynn McConville
U.S. Army Corps of Engineers, Philadelphia District

SUBJECT: CEMAP-OP-R-177300202-52
POZSGAI JOHN
AUGUST 8, 1995

DIFFERENCES BETWEEN ACREAGE OF UNAUTHORIZED WORK FROM 1990 TO 1995

| SECTION | AREA OF UNAUTHORIZED WORK 1990 | AREA OF UNAUTHORIZED WORK 1995 | COMMENTS |
|---------|---------|---------|----------|
| 1 | 0.32 | 0.30 | Difference between fill lines is less than 0.02 acres. |
| 2 | 1.87 | 1.74 | Difference reflects an increase of approximately 0.17 acres of fill material toward the center of the property where garbage and organic wastes such as wood chips have been deposited recently. The difference also reflects a decrease of 0.34 acres, originally mapped as filled, on the east side of the creek. Field investigations showed that fill material stopped at the creek and that the areas east of the creek were previously undisturbed. |
| 3 | 1.26 | 0.60 | Difference reflects removal of 0.66 acres of material for restoration. The remaining difference between the lines is less than 0.04 acres. |
| 4 | 1.55 | 1.53 | Difference reflects variation in the lines with an increased area of 0.1 acres on the west side and a decrease of 0.12 acres on the east side along the stream. These variations do not appear to reflect the recent performance of any unauthorized work. |
| 5 | 1.13 | 0.66 | Difference reflects the removal of 0.4 acres of material for restoration and a decrease of 0.07 acres of area adjacent My Lane that had been marked as filled in 1990. Field investigations showed these areas had been disturbed but not converted to uplands by the unauthorized work. |

Ms. Lynn McConville
US Army Corps of Engineers, Philadelphia District

ENCLOSURE 4