**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| et al., | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | No. 88-6545 |
| v. | : | |
| | : | |
| GIZELLA POZSGAI, | : | |
| Defendant. | : | |

May 23, 2023                                                           Anita B. Brody, J.

## MEMORANDUM

## I. INTRODUCTION

Nearly thirty-five years ago, the United States Department of Justice ("DOJ") on behalf of the Army Corps of Engineers ("Corps") and the Environmental Protection Agency ("EPA") filed a civil lawsuit against Defendants John (deceased) and Gizella Pozsgai (collectively, "the Pozsgais") under the Clean Water Act.  The Government alleged that Defendants discharged fill into protected wetlands on their jointly owned 14-acre tract of land in Bucks County, Pennsylvania ("Pozsgai site" or "the property") without a permit in violation of 33 U.S.C. § 1311(a).  For decades, the Pozsgais have refused to comply with a record number of court orders and have failed to remediate the property.  The United States now moves for approval and entry of a proposed consent decree to resolve this decades-long litigation although the intervenor continue to oppose the proposal.

## II. FACTUAL BACKGROUND

In 1988, the United States brought this civil action against the Pozsgais and a parallel criminal action against John Pozsgai.  *See United States v. Pozsgai*, 999 F.2d 719, 723 (3d Cir. 1993).

1

**A. Procedural History of the Criminal Action (88-450-1)**

On December 27, 1988, Judge Marvin Katz presided over the criminal jury trial of John Pozsgai and, on December 30, 1988, a jury convicted John Pozsgai of forty counts of unpermitted discharge.  *See id.*; *see also* Docket Entries, Br. of Appellant and J.A. at 2a, *United States v. Pozsgai*, No. 91-1203 (3d Cir. filed Apr. 29, 1991) (summarizing the docket entries in *United States v. Pozsgai*, No. 88-450-1 (E.D. Pa. filed 1988) and recording the jury trial at Docket No. 17). On January 5, 1989, John Pozsgai moved to set aside the verdict and enter a judgment of acquittal. *See* Docket Entries, Br. of Appellant and J.A. at 2a, *United States v. Pozsgai*, No. 91-1203 (3d Cir. filed Apr. 29, 1991) (summarizing the docket entries in *United States v. Pozsgai*, No. 88-450-1 (E.D. Pa. filed 1988) and recording the motion at Docket No. 20).  Judge Katz denied the motion, and the Third Circuit affirmed the conviction on appeal.  *See United States v. Pozsgai*, 897 F.2d 524 (3d Cir. 1990).  The United States Supreme Court denied the Pozsgais' petition for writ for certiorari.  *Pozsgai v. United States*, 498 U.S. 812 (1990).

On July 13, 1989, Judge Katz sentenced John Pozsgai to three years imprisonment, five years probation, and a fine of $200,000.  *Id.*  On February 4, 1991, John Pozsgai moved for reduction or correction of the sentence.  *See* Docket Entries, Br. of Appellant and J.A. at 2a, *United States v. Pozsgai*, No. 91-1203 (3d Cir. filed Apr. 29, 1991) (summarizing the docket entries in *United States v. Pozsgai*, No. 88-450-1 (E.D. Pa. filed 1988) and recording the motion at Docket No. 59).  Judge Katz denied the motion, stating that it was "hard to visualize a more stubborn violator of the laws that were designed to protect the environment."  *United States v. Pozsgai*, 757 F. Supp. 21, 22 (E.D. Pa. 1991).  On appeal, the Third Circuit affirmed the sentence but instructed the district court to reduce the criminal fine.  *See United States v. Pozsgai*, No. 91-1203 (3d Cir. Oct. 16, 1991) (order affirming the sentence of imprisonment and reversing and remanding for

2

consideration of the fine).

**B. Procedural History of the Civil Action (88-6545)**

In conjunction with the criminal case, on August 24, 1988, the Government brought this civil action against the Pozsgais seeking a preliminary injunction and temporary restraining order.[1] Compl, ECF No. 1; Pl.'s Mot. for Prelim. Inj., ECF No. 2; Pl.'s Appl. For TRO, ECF No. 3. On the same day, Judge John P. Fullam issued the temporary restraining order and, on September 16, 1988, he granted the preliminary injunction. *United States v. Pozsgai*, No. CIV. A. 88-6545, 1990 WL 1432, at *1 (E.D. Pa. Jan. 8, 1990). On January 8, 1990, Judge Fullam entered a final judgment against John and Gizella Pozsgai. Judge Fullam concluded the Pozsgai site contained protected wetlands and that the Pozsgais were strictly liable for the discharge of fill material without a permit into the protected wetlands. *Id.* at *2. The Court permanently enjoined the Pozsgais from further filling at the Pozsgai site without a permit and ordered that the Pozsgais implement the restoration plan submitted by the Corps.[2] *Id.* at *3.

The Pozsgais appealed Judge Fullam's judgment and related orders. On appeal, they urged that their conduct did not violate the Clean Water Act. *United States v. Pozsgai*, 999 F.2d 719, 725 (3d Cir. 1993).

On June 25, 1993, the Third Circuit affirmed Judge Fullam's judgment that the Pozsgais had violated the Clean Water Act. The panel rejected the Pozsgais' arguments that filling wetlands

---

[1] Although the case remains ongoing, the Eastern District of Pennsylvania Clerk's Office deleted the contents of the docket prior to 2000. *See* ECF Nos. 1-100.

[2] On June 18, 1991, Judge Fullam denied the Pozsgais' motion for reconsideration of the January 8, 1990 Order, and concluded that: (1) the Pozsgai site is protected wetlands; (2) the Pozsgais discharged "pollutants" into "water" under the Clean Water Act; and (3) no nationwide permit was applicable to the Pozsgais' discharge. *United States v. Pozsgai*, No. CIV. A. 88-6545, 1991 WL 111175, at *1-4 (E.D. Pa. June 18, 1991).

did not constitute discharge of pollutants "into water" within the meaning of the Clean Water Act, that their wetlands fell outside the Corps' regulation and permit requirements, and that the regulation as applied to them violated the Commerce Clause." *Id.*  Additionally, the Third Circuit affirmed Judge Fullam's restoration order that directed removal of the fill material from the wetlands portion of the Pozsgai site.  *Id.* at 736.  The Pozsgais argued that the restoration order was inequitable because of the small degree of harm caused by their discharge and their financial inability to comply with the order.  *See id.*  The Third Circuit held that the undisputed facts demonstrating the Pozsgais' repeated noncompliance with the Act and with the Corps' directives to stop filling foreclosed any such equitable argument.  *Id.*  On August 10, 1993, the Third Circuit denied the Pozsgais' petition for panel rehearing and a motion to amend the opinion.  *Id.*  The United States Supreme Court denied a writ of certiorari.  *Pozsgai v. United States*, 510 U.S. 1110 (1994).

The United States' enforcement actions triggered a hotly contested public debate about the meaning of environmental statutes and how to enforce them.[3]  On October 6, 2000, the U.S. House of Representatives Committee on Government Reform held a hearing and invited John Pozsgai as a witness.[4]  *Federal Wetlands Policy: Protecting the Environment or Breaching Constitutional Rights: Hearing Before the H. Comm. on Gov't Reform*, 106th Cong. 1 (2000).  Representative Daniel Burton of Indiana, who chaired the Committee and presided over the hearing, remarked

---

[3] *See* Howard Kurtz, *EPA Accused of Muddying Its "Jackboots" in Pennsylvania Wetlands*, WASH. POST (Jan. 3, 1990), https://www.washingtonpost.com/archive/politics/1990/01/03/epa-accused-of-muddying-its-jackboots-in-pennsylvania-wetlands/9979d9db-948b-4126-9536-63a56715a7c3/.

[4] John Pozsgai's daughters testified in his place.  *See Federal Wetlands Policy: Protecting the Environment or Breaching Constitutional Rights: Hearing Before the H. Comm. on Gov't Reform*, 106th Cong. 56-62 (2000) (testimony of Victoria Pozsgai-Khoury); *see also Federal Wetlands Policy: Protecting the Environment or Breaching Constitutional Rights: Hearing Before the H. Comm. on Gov't Reform*, 106th Cong. 64-65 (2000) (testimony of Gloria Heater).

that there were "horror stories about small landowners who are needlessly victimized by Federal policies" and John Pozsgai was "one of these small landowners." *Id.* at 3.  Representative Burton commented that he "strongly believe[d] that Mr. Pozsgai's punishment did not fit the crime." *Id.* On the other hand, Robert H. Wayland, III, then-Director of the Office of Wetlands, Oceans, and Watersheds at EPA, testified that the "record of the case established that Mr. Pozsgai purchased the property at a reduced price because of his knowledge of the presence of regulated wetlands . . . he was specifically warned by the Corps not to deposit fill material at the site." *Id.* at 197 (testimony of Robert H. Wayland, III, U.S. Env't Prot. Agency).

The Pozsgais failed to comply with Judge Fullam's January 8, 1990 Order by continuing to discharge unauthorized fill into wetlands on the Pozsgai site.  On March 15, 2002, the Government moved for another preliminary injunction and an order to show cause as to why the Pozsgais should not be held in civil contempt.  *See* Pl.'s Mot. for Prelim. Inj., ECF No. 99.

On March 18, 2002, the Delaware Riverkeeper Network ("DRN") moved to intervene to enforce the January 8, 1990 Order.  *See* Mot. to Intervene, ECF No. 100.  The DRN is a local organization that "advocates for the protection and restoration of the ecological, recreational, commercial and aesthetic qualities of the Delaware River, its tributaries and habitats."  Compl. in Intervention, ECF No. 104 ¶ 1.  Intervenor-Plaintiff argued that the Government's "unwillingness or inability to enforce the January 8, 1990 Order has impeded [DRN's] ability to protect their interests." *Id.* ¶ 25.  Then, on April 24, 2002, DRN moved for sanctions pursuant to Federal Rule of Civil Procedure 70 and a finding of contempt.  Mot. for Sanctions Pursuant to FRCP 70 and Appl. for Writ of Attach. or Sequestration and Finding of Contempt, ECF No. 106.

While Judge Fullam reviewed briefing and held evidentiary hearings on the motions, the United States Supreme Court was considering a case that re-examined what constitutes "waters of

the United States" under the Clean Water Act.  *See Rapanos v. United States*, 547 U.S. 715 (2006).

After the opinion was issued, Judge Fullam once again determined that the Pozsgai site constituted

wetlands and that *Rapanos* "did not absolve [the Pozsgais] of contempt."  March 8, 2007 Mem.

and Order, ECF No. 147, at 4.  Judge Fullam found the Pozsgais in contempt, and then dismissed

the pending motions.  *See id.*  Accordingly, Judge Fullam concluded that the Pozsgais "ha[d]

violated the valid order of this Court and are therefore in contempt" and then dismissed the pending

motions.  *Id.* at 4.  In the accompanying order, Judge Fullam ordered:[5]

> 1.      Defendants John Pozsgai and Gisella Pozsgai be and hereby are found to be
> in civil contempt for failure to comply with this Court's Order of January 8, 1990.
>
> 2.      Defendants John Pozsgai and Gisella Pozsgai are permanently enjoined
> from conducting, permitting, or authorizing any work of any kind whatsoever
> directly or indirectly at any location on the Morrisville site that is within the area
> subject to the jurisdictional determination made by the U.S. Army Corps of
> Engineers and adopted by this Court and the Third Circuit and appearing on
> Government Exhibit 1, a copy of which is attached hereto, that involves any: (a)
> filling, (b) clearing, (c) leveling, (d) dumping, (e) depositing, or (f) removing of any
> type of material without first obtaining a permit from the U.S. Army Corps of
> Engineers.
>
> 3.      Defendants John Pozsgai and Gisella Pozsgai shall complete remediation of
> the Morrisville property in accordance with the February 13, 1996 Restoration Plan
> of the U.S. Army Corps of Engineers, as that plan may be reasonably amended or
> adjusted by the Corps. Such remediation is to be completed to the satisfaction of
> the Corps withing [sic] 90 days of the date of entry of this Order.
>
> 4.      In the event that Defendants John Pozsgai and Gisella Pozsgai fail to
> complete remediation of the Morrisville property as set forth in Paragraph 3 above,
> then, in order to compensate for Defendants' non-compliance, the following
> sanctions shall be imposed:
>
> a.      Authorizing the U.S. Army Corps of Engineers to designate persons to enter
>         upon and remediate the Morrisville property in accordance with the
>         February 13, 1996 Restoration Plan of the U.S. Army Corps of Engineers,
>         as that plan may be reasonably amended or adjusted by the Corps;

---

[5] Although the caption of the case and the original deed list Defendant as "Gizella Pozsgai," Judge Fullam's
2007 Contempt Order listed Defendant as "Gisella Pozsgai."  *See* Deed, ECF No. 234-4, at 14.

b. Authorizing the U.S. Army Corps of Engineers, or anyone designated by it, to enter upon and inspect the Morrisville property at such times as the Corps may choose;

c. Imposing a protective buffer, as designed by the U.S. Army Corps of Engineers, in uplands areas around all water and wetlands areas on the Pozsgai site to prevent further encroachments;

d. Assessing against Defendants John Pozsgai and Gisella Pozsgai, individually, as a judgment all costs reasonably incurred in connection with the enforcement of this Order and the Order of January 8, 1990, including, but not limited to, oversight costs of the Corps;

e. Assessing as a judgment lien against the Morrisville property all costs reasonably incurred in connection with the enforcement of this Order and the Order of January 8, 1990, including, but not limited to, oversight costs of the Corps;

f. Holding the United States, the U.S. Army Corps of Engineers, and any agents, servants, contractors, and designees thereof harmless for any actions (other than intentional misconduct or gross negligence) undertaken under color of this Order;

g. Imposing upon all areas remediated pursuant to this Order, all other water and wetland areas on the Morrisville property, and all protective buffers created pursuant to this Order, a deed restriction that will forever designate and protect them as waters, wetlands, and protective buffers as open space, and so that all future owners of the property, or an interest in the property, will be aware of the presence of the waters, wetlands and protective buffers, and this existence of this Court's Order;

h. Requiring that the Defendants John Pozsgai and Gisella Pozsgai and any subsequent owners of the water and wetland areas be required to inform any contractors, lessors, or assigns of the existence and terms of this Court's Order;

i. Allowing the United States to recover its costs incurred in connection with all contempt proceedings.

Mem. and Order of March 8, 2007, ECF No. 148 ("2007 Contempt Order").

Again, the Pozsgais appealed—this time, Judge Fullam's 2007 Contempt Order. *See*

*United States v. Pozsgai*, No. 07-1900 (3d Cir. filed March 29, 2007). Again, the Third Circuit

dismissed the appeal.  *See United States v. Pozsgai*, No. 07-1900 (3d Cir. Feb. 6, 2009) (order dismissing appeal).  Despite the 2007 Contempt Order, the Pozsgais never remediated the site.

On April 20, 2011, the case was transferred from Judge John P. Fullam to Judge Stewart Dalzell.  Order, ECF No. 157.  On October 12, 2011, John Pozsgai died.  *See* Notice of Death of One of the Parties, ECF No. 182.  On December 7, 2016, the case was reassigned to me.  Order, ECF No. 166.  More than thirteen years later, Gizella Pozsgai ("Pozsgai") had not complied with Judge Fullam's 2007 Contempt Order.  On April 12, 2017, I referred the case to Magistrate Judge David R. Strawbridge for a settlement conference.  Referral Order, ECF No. 173.  For over two years, Judge Strawbridge worked diligently with the parties to settle the case.  *See* Further Referral Order, ECF No. 192.  In an effort to settle the case, the United States arranged for a third party, Waste Management of Fairless, LLC ("Waste Management"), to perform the remediation at no cost to Pozsgai.[6]  *See* Status Report, ECF No. 170.  Despite Judge Strawbridge's prolonged settlement efforts and the arrangement by the United States that would enable Pozsgai to remediate her property for free, Pozsgai refused to settle and did not cooperate to enable Waste Management to remediate her property.

Because settlement efforts were futile, the United States moved to implement the 2007 Contempt Order.  I granted the Government's motion in 2020.  Order, ECF No. 253 ("2020 Order").  Pozsgai then moved for reconsideration and asked me to vacate the 2020 Order.  *See* Mot. for Reconsideration, ECF No. 254.  I denied the motion and, once again, Pozsgai appealed. *See* Notice of Appeal, ECF No. 271.

---

[6] Although the 2007 Contempt Order permitted the United States to designate a third party to remediate the Pozsgai site without obtaining permission from the Pozsgais, the United States sought the cooperation of the Pozsgai family.  *See* Status Report, ECF No. 170.

On October 13, 2022, the parties requested that the Third Circuit dismiss the appeal.  Order of USCA as to Notice of Appeal, ECF No. 276.  The next day, the United States filed a Notice of Lodging of Proposed Consent Decree and published the Proposed Consent Decree on the Federal Register for public comment.  Notice of Lodging of Proposed Consent Decree, ECF No. 277 ("Proposed Consent Decree").  The United States now moves for approval and entry of the Proposed Consent Decree.  Mot. to Enter Consent Decree, ECF No. 279 ("Consent Decree Motion").

On March 15, 2023, I held a hearing on the present motion.  ECF No. 283.  At the hearing, the Government said it welcomed these prior orders, Hearing Tr., ECF No. 283, but today it requests a final resolution to the litigation that will nullify those orders and replace them with a consent decree.  *See* Proposed Consent Decree ¶ 22.  The Government reported to me that this was the best it could accomplish as to the rehabilitation of the wetlands on the Pozsgai site.  Hearing Tr., ECF No. 283.

The Government has asked this Court – over three decades and before three judges presiding over the civil action[7] – to uphold the Clean Water Act by holding the Pozsgais accountable and mandating the cleanup of the Pozsgai site.  The Court has repeatedly agreed with the Government and granted its requests.  January 8, 1990 Order; 2007 Contempt Order; 2020 Order.  Today, the Government would like to clear the enforcement action it brought in 1988 and litigated for almost thirty-five years from its docket, even if the resolution of this action is less complete than what Judge Fullam outlined at the Government's request in 1990.  For the reasons below, the Court will grant the Government's motion.

---

[7] Judge Fullam passed in 2018, Judge Dalzell passed in 2019, and Judge Katz, who presided over the criminal trial, passed in 2010.

### C.  The Proposed Consent Decree

The Proposed Consent Decree is a settlement between the United States, Gizella Pozsgai, and Britton Industries, Inc. and Britton Realty of Bridge Street, LLC (collectively, "Britton").[8] The Proposed Consent Decree provides that Britton will purchase the property and then facilitate the restoration and preservation of the site under the terms of the consent decree.  Pozsgai would be "responsible for ensuring that, on or before the closing of the Purchasing Agreement, the Site is cleared of all property owned by Pozsgai or her tenants" and "[u]pon the closing of the Purchase Agreement or the final approval by the Court[], whichever is later, Pozsgai shall have no further obligations to perform restoration and removal work at the Pozsgai site."  Proposed Consent Decree ¶ 16.

Britton's responsibilities are outlined in the Proposed Consent Decree, the Wetlands Restoration Plan ("Restoration Plan"), and the Wetlands Restoration Guidelines ("Restoration Guidelines").  *See id.* ¶ 17; *see also* Proposed Consent Decree, Ex. A & Ex. C.  "The Restoration Guidelines are incorporated as an enforceable term . . . and any design plans and schematic drawings approved by the Corps and agreed to in writing by Britton . . . are incorporated as enforceable terms of the Restoration Guidelines and this Consent Decree.  *Id.* ¶ 17(a).  Upon completion of the tasks outlined in the Restoration Guidelines, "Britton shall notify the Corps and the DOJ . . . that the Restoration Project is complete."  *Id.* ¶ 17(c).  The United States must then inspect the Pozsgai site and decide whether the project is complete or needs additional work to be considered complete.  *Id.* ¶ 17(c).  Should the United States deem the project complete, the

---

[8] U.S. Attorney for the Eastern District of Pennsylvania Jacqueline C. Romero, Assistant U.S. Attorney Gregory B. David, and Assistant U.S. Attorney Landon Y. Jones III signed the agreement on behalf of the United States.  Lawrence A. Kogan signed the agreement on behalf of his client and the property owner, Gizella Pozsgai. Andrew Kaplan signed the agreement on behalf of his client, Britton.  *See* Proposed Consent Decree 25-26.

Government will certify that in writing and "Britton shall have no further obligations with respect to the Restoration Project, other than the monitoring and reporting requirements described in Section 3.0 of the Restoration Guidelines." *Id.* Britton's responsibility to monitor and maintain the Pozsgai site upon completion of the restoration includes periodic reporting to the United States under the Restoration Guidelines. *Id.* ¶ 19.

The Restoration Plan designates certain areas as "Existing Wetlands, Previously Restored Wetlands, Unauthorized Fill to be Removed & Restored, and Preserved Upland Buffer" that are to be protected by a Deed Restriction, subject to approval by the Corps and DOJ in a manner outlined in the Proposed Consent Decree. *Id.* ¶ 20-21. Once the Deed Restriction is approved and recorded, "the prior deed restriction imposed by the Court's January 8, 1990 order, the 2007 Contempt Order, and the 2020 Order shall be vacated and no longer have any force or effect." *Id.* ¶ 22.

The proposal provides that while the Consent Decree is in effect, the United States and any of its representatives will be able to enter the areas identified in the Restoration Plan of the Pozsgai site for monitoring, data verification, obtaining samples/other evidence, inspecting and evaluating the Restoration Project, and reviewing non-privileged records retained under the Consent Decree and the Clean Water Act. *Id.* ¶ 34. The Proposed Consent Decree also outlines resolution methods for disputes arising as to the meaning or requirements of the Consent Decree. *Id.* ¶ 37-39. Should Britton fail to fulfill its responsibilities, it will be required to pay a stipulated penalty to the United States for each violation of each requirement of the Consent Decree on the following scale: "a. For Day 1 up to and including Day 30 of non-compliance $500.00 per day; b. For Day 31 up to and including Day 60 of non-compliance $1,000.00 per day; c. For Day 61 and beyond of non-compliance $1,500.00 per day." *Id.* ¶ 45. The United States may "reduce or waive stipulated

11

penalties otherwise due it under this Consent Decree." *Id.* ¶ 50.

Parties are responsible for their own costs and attorneys' fees, unless Pozsgai or Brittan are "determined by the Court to have violated the terms or conditions of this Consent Decree . . . [then they] shall be liable for any costs or attorneys' fees incurred by the United States in any action against Pozsgai or Britton for noncompliance with or enforcement of this Consent Decree." *Id.* ¶ 52. The Court retains jurisdiction for enforcement, modification, and dispute resolution purposes. *Id.* ¶ 54. Parties may present modifications to the Consent Decree if signed by the United States and Britton, and approved by the Court, but modifications to the Restoration Guidelines are effective if signed by the Corps and Britton. *Id.* ¶ 55. The Consent Decree may be terminated by joint stipulation of the United States and Britton, subject to the Court's approval. *Id.* ¶ 56-58.

### D. Public Comment

The Government received one public comment during the thirty-day notice-and-comment period from Intervenor-Plaintiff DRN. *See* Consent Decree Motion, Ex. A, ECF No. 279-2 ("DRN Comment"). In its comment, DRN argued that the Proposed Consent Decree "is an inadequate resolution to egregious violations of the Clean Water Act." *Id.* at 1. DRN believed that the United States should fully remediate the Pozsgai site as permitted under the January 8, 1990 Order. *See id.* DRN commented that:

> By sheer obstinance, the Defendants in this case have been able to evade their obligation to remediate the wetlands on the Property, benefitted from decades of use of the illegally-filled wetlands, and are now able to profit from the sale of the Property in its degraded state. Even worse, the Property will *not* be fully restored, and instead will be partially restored and used by [Britton], a mulching company.

*Id.* at 3 (emphasis in original).

DRN's objections were that: (1) the United States has been fully authorized to remediate

the Pozsgai site and should commence the remediation; and (2) the Restoration Plan and Restoration Guidelines should not be approved because they do not meet the standard of approval of a consent decree or the requirements for authorization under a Clean Water Act general permit and Nationwide Permit 32 Resolution of Enforcement Actions ("NWP 32").[9]  *See id.*

First, DRN argued that the Restoration Plan and Restoration Guidelines "result in a permanent loss of 4.46 acres of wetlands, and long-term loss of 2.12 acres of wetlands."[10]  *Id.* at 4. Further, DRN believed that the remaining wetlands under the Proposed Consent Decree will not be adequately protected from degradation because a "two-to-one wetland to upland slope is an insufficient buffer."  *Id.*  Instead, DRN proposed that a "buffer should be at least twenty-five feet in width" for adequate protection.  *Id.*  DRN also proposed that "all seed mixes, seeding, and plantings proposed in the Wetlands Restoration Guidelines should be solely native species in order to restore the ecological value of the Property."  *Id.* at 5.

Second, DRN argued that the Restoration Guidelines do not ensure compliance with NWP 32.  DRN proposed that the Corps should ensure the stream is daylighted with a bridge over it to maintain the stream's natural habitat, instead of allowing Britton to build a culvert with a recessed bottom to allow aquatic life to pass.  *See id.*  Additionally, DRN argued that the unauthorized fill material should not remain on-site, and the Restoration Guidelines do not "guarantee that any subsequent remedial action will address potentially undetected solid waste in the fill that is permitted to remain."  *Id.* at 6.  DRN also argued that the United States fails to

---

[9] The Chief of the Regulatory Branch of the Corps drafted a letter to the Chief Financial Officer of Britton evaluating the proposal, authorizing the restoration work under NWP 32, and enacting special conditions for work performed.  *See* Proposed Consent Decree, Ex. B, ECF No. 277-1.

[10] DRN also suggested to the Court that the unauthorized fill material remaining in the 4.46 acres of wetlands has not been appropriately analyzed by the Corps, and that the Corps should conduct a comprehensive analysis of the fill material.  Hearing Tr., ECF No. 283, at 1:04:01-1:04:36.

explain why one-for-one compensatory mitigation was not required under NWP 32.  *See id.*  DRN argued that the Restoration Plan likely does not meet the "no more than minimal adverse effects" requirement for authorization under NWP 32.  *See id.*

Finally, DRN argued that the Deed Restriction outlined in the Proposed Consent Decree should be revised and require the Pozsgai site to be maintained in "a litter-free condition."  *Id.* at 8.  DRN proposed that the Deed Restriction be expanded to the entire property and include stormwater management requirements.  *See id.*  DRN believed that by proposing this settlement, "the United States relegates the Clean Water Act to a mere inconvenience rather than a legal prohibition."  *Id.* at 7.  DRN asked that the United States either withdraw the Proposed Consent Decree and proceed with its own remediation of the Pozsgai site or accept its proposed modifications.  *Id.* at 8.  The Government declined to withdraw its support for the Proposed Consent Decree and now asks the Court to approve and enter the original Proposed Consent Decree that was lodged in the Federal Register without modifications.[11]  *See* Consent Decree Motion 6-12.

## III. DISCUSSION

A consent decree is entered as a judgment of the court and has the characteristics of both a contract and a judicial decree.  *See Local 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478

---

[11] The Government reserved the right to withdraw its consent from the Proposed Consent Decree if public comments "disclose facts or considerations which indicate that the proposed judgment is inappropriate, improper or inadequate." 28 U.S.C. § 50.7(b).  After considering DRN's comment, the Government argues that the Corps is entitled to deference for determining the technical components of the remediation plan and its refusal to modify them, with explanation provided by the Corps Biologist overseeing the Pozsgai matter, Michael P. Leggiero.  *See* Consent Decree Motion 7; *see also* Consent Decree Motion, Ex. B – Declaration of Michael P. Leggiero, ECF No. 279-3.  I defer to the Corps for its technical expertise in the matter.  *See United States v. Se. Pa. Transp. Auth.*, 235 F.3d 817, 822 (3d Cir. 2000) ("*SEPTA*").  The Government represented to the Court that there could be future agreements with Britton that incorporate some of the modifications suggested by DRN, and the Court would encourage the parties to discuss memorializing those suggestions and welcomes review of any appendices to the Consent Decree.  Hearing Tr., ECF No. 283, at 1:01:30-1:02:48.

U.S. 501, 519 (1986).  A court "should approve a proposed consent decree if it is fair, reasonable, and consistent with [the statute]'s goals." *United States v. Se. Pa. Transp. Auth.*, 235 F.3d 817, 823 (3d Cir. 2000) ("*SEPTA*") (citing *United States v. Cannons Eng'g Corp.*, 899 F.3d 79, 85 (1st Cir. 1990)).  "A consent decree must fairly, adequately, and reasonably resolve the pending controversy, while remaining consistent with the public interest." *United States v. Atofina Chemicals, Inc.*, No. 01-7087, 2002 WL 1832825, at *4 (E.D. Pa. Aug. 5, 2002) (citing *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 965 (3d Cir. 1983)).  A court may either accept or reject a proposed consent decree but cannot "modify the settlement into one which it 'considers as ideal.'"  *Id.* (citing *Cannons Eng'g Corp.*, 899 F.2d at 84).

In environmental cases brought by the United States, courts owe "deference . . . to [the] EPA's expertise and to the law's policy of encouraging settlement."  *Id.* (citing *SEPTA*, 235 F.3d at 822).  Because of EPA's specialized expertise on environmental torts and role in initiating Clean Water Act enforcement actions,[12] settlements garnered by EPA are especially favored.  *See Cannons Eng'g Corp.*, 899 F.2d at 84; *see also United States v. Cannons Eng'g Corp.*, 720 F. Supp. 1027, 1035 (D. Mass. 1989), *aff'd*, 899 F.2d 79 (1st Cir. 1990) ("The presumption in favor of settlement is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency specially equipped, trained, or oriented in the field.  EPA is such an agency.").  District courts reviewing proposed consent decrees therefore have limited discretion under a policy that ultimately favors voluntary settlement.  "While the district court should not mechanistically rubberstamp the agency's suggestions, neither should it

---

[12] "Because the commencement of an enforcement action under the CWA is largely discretionary, settling that action is also within the EPA's discretion." *United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996).

approach the merits of the contemplated settlement *de novo*." *United States v. Cannons Eng'g Corp.*, 899 F.3d 79, 84 (1st Cir. 1990).  The Court is tasked with evaluating the facts of the case without substituting its own judgment for that of the parties who negotiated the settlement.  *United States v. U.S. Steel Corp.*, No. 2:18-CV-127 JD, 2021 WL 3884852, at *6 (N.D. Ind. Aug. 30, 2021).

### A. Fairness

A court must first consider whether the proposed consent decree is procedurally and substantively fair.  *See In re Tutu Water Wells CERCLA Litigation*, 326 F.3d 201, 207 (3d Cir. 2003).  "Procedural fairness requires that settlement negotiations take place at arm's length." *Id.* Substantive fairness requires "some rational apportionment of liability among the settling parties." *United States v. Atlas Minerals and Chemicals, Inc.*, 851 F. Supp. 639, 653 (E.D. Pa. 1994).

#### 1. Procedural Fairness

All parties to the consent decree agree that the proposal is the result of arm's-length negotiation conducted in good faith.  *See* Consent Decree Motion 4.  There is no indication that any party bargained in bad faith or colluded.  *United States v. Lehigh Cement Co. LLC*, No. 5:19-CV-05688, 2020 WL 6799256, at *3 (E.D. Pa. Nov. 18, 2020).  After lodging the Proposed Consent Decree with the Court, the Government published it in the Federal Register for public comment and received one comment by Intervenor-Plaintiff DRN objecting to the proposal.  DRN does not contest that the Proposed Consent Decree is procedurally fair.  DRN challenges the proposal for substantive fairness, reasonableness, and adequacy.  *See* DRN Comment 3.

#### 2. Substantive Fairness

Substantive fairness is reviewed for a fair apportionment of liability in a way that "is not arbitrary, capricious, or devoid of rational basis."  *United States v. Lehigh Cement Co. LLC*, No.

5:19-CV-05688, 2020 WL 6799256, at *3 (E.D. Pa. Nov. 18, 2020) (citing *SEPTA*, 235 F.3d 817, 824 (3d Cir. 2000)).  Substantive fairness is not an invitation for the Court to substitute its own judgment for the agency's expertise.  The Court is tasked only with reviewing the Government's apportionment of liability in the Proposed Consent Decree under a deferential standard.  DRN argues that the Proposed Consent Decree is substantively unfair because the sale of the filled wetlands for industrial use is effectively a windfall for Pozsgai, who violated the Clean Water Act and blatantly disregarded court-ordered mandates to restore the land for nearly thirty-five years.

I acknowledge DRN's strong objection to the Proposed Consent Decree.  It seems contradictory to hold Pozsgai accountable for failing to remediate the property for decades while still allowing Pozsgai to retain proceeds of the sale to Britton.  The Government states that the purchase and sale agreement "ensure[s] that Pozsgai does not obtain economic benefit from her refusal to remediate the Site."  Consent Decree Motion 5.  The Government did not attach the purchase and sale agreement to its motion; however, the Government reported to the Court that the final sale price was approximately $2.1 million.  Hearing Tr., ECF No. 283, at 24:06-24:10. The Government also reports that Pozsgai has contributed $50,000 into clearing the property and preparing it for remediation.  Consent Decree Motion 4-5.  Pozsgai has repeatedly alleged her lack of resources to conduct the remediation, though it appears that she will obtain financial resources from the sale that could conceivably be used to remediate the property or pay civil penalties. Nonetheless, I am not permitted to ask the Government to negotiate a different consent decree in my review; I am only authorized to accept or reject the proposition.  *See United States v. Cannons Eng'g Corp.*, 899 F.3d 79, 84 (1st Cir. 1990).

The United States has determined that this deal appropriately apportions responsibility to Pozsgai and, upon purchase and sale, to Britton.  "The EPA is best placed to balance environmental

harms and benefits against each other: the court's discretion to re-weigh the balance is necessarily limited." *United States v. Atofina Chemicals, Inc.*, No. 01-7087, 2002 WL 1832825, at \*5 (E.D. Pa. Aug. 5, 2002).  Furthermore, "[c]ivil penalties in environmental cases are not an exact science." *United States v. U.S. Steel Corp.*, No. 2:18-CV-127 JD, 2021 WL 3884852, at \*9 (N.D. Ind. Aug. 30, 2021).  Under Section 309(d) of the Clean Water Act, a court may consider "the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require," to evaluate whether a civil penalty is fair.  *Id.* (citing 33 U.S.C. § 1319).  EPA-issued non-binding guidance instructs the agency to consider "the economic benefit and gravity of the violations as well as weighing litigation considerations, the violator's ability to pay, and any supplemental environmental projects."  *Id.* (citing U.S. Env't Prot. Agency, Interim Clean Water Act Settlement Penalty Policy 4, 23 (1995)).

EPA followed this guidance by considering Pozsgai's inability to pay for remediation and ultimately concluded that Britton will assume potential civil penalties for any future violations of the Proposed Consent Decree.  In a similar environmental enforcement action involving the Clean Water Act, the Defendant demonstrated financial hardship that prevented it from complying with the law and a third party "agreed to assume the Defendant's responsibilities for bringing the [sites] into compliance with the CWA . . . ." *United States v. Town of Timmonsville*, No. 4:13-CV-01522-RBH, 2013 WL 6193100, at \*3 (D.S.C. Nov. 26, 2013).  In place of a civil penalty assessed against the Defendant, the agreement contemplated "stipulated penalties in the event of noncompliance with the requirements of the proposed consent decree."  *Id.*  EPA has envisioned an identical apportionment of liability in this litigation, under which Britton takes on the costs and conducts

the remediation because Pozsgai is unable to pay for it.  DRN fails to present any case where a

court has held that EPA's consideration of liability apportionment was arbitrary, capricious, or

lacked a rational basis such that the proposal was substantively unfair.  I decline to second guess

the agency's decision.

This settlement "represents a recovery of the maximum possible amount of money

obtainable from the [party] given [her] net worth and [her] limited ability to pay." *United States*

*v. Vertac Chem. Corp.*, 756 F. Supp. 1215 (E.D. Ark. 1991), *aff'd sub nom. United States v.*

*Hercules, Inc.*, 961 F.2d 796 (8th Cir. 1992).  It is possible that the Government could have

imposed civil penalties upon Pozsgai to be recovered upon sale of the property, but that was not

the decision the agency made and it is not my role to impose any term upon the parties.  *United*

*States v. U.S. Steel Corp.*, No. 2:18-CV-127 JD, 2021 WL 3884852, at *17 (N.D. Ind. Aug. 30,

2021).  Pozsgai's track record shows that the site could remain as is, without any restoration of the

illegally-filled wetlands, unless a third party like Britton commits to remediate the property at its

own cost.

The accountability the Government achieved was through its parallel criminal proceeding

with John Pozsgai's conviction and imprisonment.  *See United States v. Pozsgai*, 999 F.2d 719,

723 (3d Cir. 1993).  If the Government, who initiated this enforcement action and litigated it for

nearly thirty-five years, is reasonably satisfied to now hold Britton accountable in Pozsgai's place,

then the Court will not challenge the agency's judgment.  On these grounds, I find the Proposed

Consent Decree is substantively fair.

### B. Reasonableness

A court must next consider the reasonableness of the proposal.  The inquiry is "tri-faceted"

and reviews: (1) the "decree's likely efficaciousness as a vehicle for cleansing the environment,"

(2) "whether the settlement satisfactorily compensates the public for the actual (and anticipated) costs of remedial response measures," and (3) the "relative strength of the parties' litigation positions." *United States v. Lehigh Cement Co. LLC*, No. 5:19-CV-05688, 2020 WL 6799256, at *3 (E.D. Pa. Nov. 18, 2020).

The Government contends that the Proposed Consent Decree efficaciously remediates a sizeable portion of the filled wetlands. The Pozsgai site is approximately 14.23 acres. Under the Restoration Plan, the proposal designates approximately 2.5 acres of undisturbed wetlands, over 3 acres of existing uplands, approximately 1 acre of wetlands that had been filled but were since restored by a third party, over 2 acres of filled wetlands that will be restored under the Proposed Consent Decree, under 4.5 acres of filled wetlands that will be subject to NWP 32 for economic activity, and 3.37 acres of uplands neighboring the Pozsgai site.[13]  Britton, as the owner of a neighboring tract of land, will preserve the forested uplands area neighboring the Pozsgai site.[14] DRN objects to the use of the filled wetlands for industrial development by Britton, which is a mulching and landscaping company.

Judge Fullam's January 8, 1990 Order was ahead of its time and ensured the best possible remediation of the Pozsgai site. In the nearly thirty-five years since Judge Fullam issued his judgment and the corresponding order, however, the Pozsgai site has only been minimally remediated. The Government argues that some amount of restoration is better than none, which

---

[13] A map detailing these designations is attached to the Proposed Consent Decree. *See* Proposed Consent Decree, Ex. B, ECF No. 277-1. The parties reported these approximations to the Court during a hearing on the Government's motion held on March 15, 2023. Hearing Tr., ECF No. 283, at 12:48-15:18.

[14] At the hearing on the Government's motion, the Government reported: "What Britton brings to the table . . . is this adjoining area of upland woodlands. There is a forested area that essentially borders the southern edge of the Pozsgai property and also continues along the southeastern portion of the Pozsgai property . . . That would be preserved under the Consent Decree." Hearing Tr., ECF No. 283, at 9:37-10:07.

has been the status quo for over three decades.[15]  My hands are tied because I can neither ask the parties to reconsider the scope of the remediation agreed upon in the proposal, nor can I second guess the judgment of the agencies with expertise on the matter.  The Government is charged with enforcing the Clean Water Act as its steward, and I must take it at its word when it argues that the lengthy litigation and subsequent negotiation between the parties has led to the most practical and efficacious solution to remediate the wetlands.  Granting appropriate deference to EPA and the Corps, I am inclined to agree that the Proposed Consent Decree is likely efficacious for cleansing some amount of the environment.

Additionally, in reviewing a proposed consent decree under an environmental statute, courts review "the adequacy of the factors used to calculate the penalty or fine." *United States v. Lehigh Cement Co. LLC*, No. 5:19-CV-05688, 2020 WL 6799256, at *5 (E.D. Pa. Nov. 18, 2020). If Britton violates the Proposed Consent Decree, it will be subjected to stipulated penalties under the Consent Decree; civil penalties are specifically contemplated in the text of the Clean Water Act. *See* 33 U.S.C. § 1319(d).  The potential civil penalties incorporated into the Proposed Consent Decree were adequately determined by the agency,[16] and the threat of payment should serve to deter Britton from violating the agreement.

Finally, the Government brought this case in 1988 and obtained a series of court orders against Pozsgai to remediate the site and enforce the restoration plan.  January 8, 1990 Order; 2007

---

[15] Of course, DRN's argument that the Government also had the opportunity and authority for nearly thirty-five years to restore the property on its own in accordance with the January 8, 1990 Order is valid.  The Government could have remediated the property in its role safeguarding the nation's environment and the Clean Water Act but it decided against that approach.  The Court is unable to mandate that the Government undertake the restoration at its own cost in its own enforcement action.

[16] *See United States v. U.S. Steel Corp.*, No. 2:18-CV-127 JD, 2021 WL 3884852, at *9 (N.D. Ind. Aug. 30, 2021) (detailing agency flexibility in determining the penalty).

Contempt Order; 2020 Order.  Generally, if the government has a case that is "strong and solid" then it should "drive a harder bargain."  *United States v. Cannons Eng'g Corp.*, 899 F.3d 79, 90 (1st Cir. 1990).  If the government anticipates lengthy and complex litigation,[17] even with a strong case, "a settlement which nets less than full recovery of cleanup costs is nonetheless reasonable."  *Id.*  For nearly thirty-five years, private parties and the Government have spent a considerable amount of public and private resources trying to enforce judicial orders and reach a practical outcome.  It is therefore reasonable for the Government to settle this decades-long litigation through the Proposed Consent Decree.

## C.  Objectives of the Clean Water Act and the Public Interest

A court's final consideration is the proposed consent decree's application to the purposes of the environmental statutes forming the basis of the complaint.  *United States v. Atofina Chemicals, Inc.*, No. 01-7087, 2002 WL 1832825, at *4 (E.D. Pa. Aug. 5, 2002).  The primary objective of the Clean Water Act is the "restoration and maintenance of chemical, physical and biological integrity of the Nation's waters."  33 U.S.C. § 1251.

The Proposed Consent Decree advances the Clean Water Act by ensuring the Restoration Guidelines are incorporated as an enforceable term under the agreement.  Consent Decree Motion 6.  The enforceability of the Restoration Guidelines, followed by the United States' review of Britton's remediation upon its completion of the Restoration Project, will finally provide some restoration of the filled wetlands.  *Id.*  This is a permanent resolution to the Pozsgai litigation saga

---

[17] In one instance, a court declined to approve and enter a proposed consent decree because it was lodged on the same day that the DOJ filed its enforcement action.  *See United States v. Telluride Co.*, 849 F. Supp. 1400, 1403 (D. Col. 1994).  The court noted that "unlike many other environmental enforcement cases, this proposed decree was not the product of the parties' desire to settle long-running litigation through which the strength and weaknesses of each side's case was revealed."  *Id.* (*compare United States v. Hercules, Inc.*, 961 F.2d 796, 798 (8th Cir. 1992)).

and brings any owners of the land into "compliance with laws designed to protect human health and the environment." *United States v. Town of Timmonsville*, No. 4:13-CV-01522-RBH, 2013 WL 6193100, at *4 (D.S.C. Nov. 26, 2013). As the owner of a neighboring tract of land, Britton has also committed to preserving additional forested land that the Government believes to be environmentally valuable.[18] Even though the agreement does not guarantee restoration of the entire site, "while not solving every problem [it] makes significant progress." *United States v. District of Columbia*, 933 F. Supp. 42, 52 (D.D.C. 1996).

## IV. CONCLUSION

A settlement agreement is necessarily a compromise. *See Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1124 (D.C. Cir. 1983). The Proposed Consent Decree resolves the decades-long litigation brought by the United States against the Pozsgais and entrusts Britton with the responsibility to remediate some of the site while allowing it to utilize other portions of the site for industrial development. The Government prosecuted this case, negotiated what it considers a "fortuitous" opportunity to remediate some of the Pozsgai site, and is satisfied with Britton conducting the restoration. Hearing Tr., ECF No. 283, at 7:10-8:41. The Court's role is not to substitute its own judgment for the parties' and decide how it would have prosecuted and resolved the case. *United States v. District of Columbia*, 933 F. Supp. 42, 51 (D.D.C. 1996).

The Court will accept this Proposed Consent Decree because the Government has shown the Court that it has given up on pursuing other more complete remedies for the Pozsgais' violation of the Clean Water Act. The Government has convinced the Court that this is the best it could do. After over three decades, and before three presiding judges of this Court, each and every one of

---

[18] The Government represented that the forested land could serve as a useful environment for further wetlands development. Hearing Tr., ECF No. 283, at 16:40-17:37.

the Government's requests to remediate the property and hold the Pozsgais accountable was granted.   Now, the Court will accept the Government's request again to finally resolve the litigation.   For these reasons, I will grant the Government's motion.




  *S/Anita B. Brody*
ANITA B. BRODY, J.


Copies via ECF on